UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON HERNANDEZ,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.: 21-CV-225-SBC<br><br>**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION

This action arises from the Commissioner of Social Security's ("Commissioner" or "Defendant") denial of Ramon Hernandez's ("Plaintiff") application for disability insurance benefits under Title II and Part A of Title XVIII of the Social Security Act ("Act"). Before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. (Doc. Nos. 13, 14.) Specifically, Plaintiff requests a sentence six remand for further administrative proceedings to reconcile the Commissioner's initial unfavorable decision with its subsequent favorable decision. 42 U.S.C. § 405(g). At issue is whether the Commissioner's subsequent grant of disability insurance benefits, which found Plaintiff disabled one day after the administrative law

judge ("ALJ") found Plaintiff not disabled based on his first application, constitutes new and material evidence to support a sentence six remand. Further, at issue is whether the ALJ improperly relied on vocational expert testimony in making his step-five determination. Having reviewed and considered the Parties' briefs, the entirety of the administrative record, and relevant case law, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Cross-Motion for Summary Judgment.

## II. PROCEDURAL HISTORY

On November 14, 2018, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II and Part A of Title XVIII of the Social Security Act, alleging disability onset as of March 24, 2018. (AR 230-31.) On March 12, 2019, the Commissioner issued an unfavorable decision to Plaintiff, finding that Plaintiff did not meet his evidentiary burden to support a finding of disability. (AR 134-37.) Plaintiff subsequently requested reconsideration of the initial determination on May 8, 2019. (AR 139.) On June 28, 2019, the Commissioner denied Plaintiff's request for reconsideration, finding that Plaintiff's condition was not severe enough to keep him from working. (AR 140-45.) On August 29, 2019, Plaintiff requested a *de novo* hearing before an ALJ. (AR 146-47.) The Commissioner appointed ALJ Robert Iafe ("ALJ Iafe") to adjudicate Plaintiff's application. (AR 163-85.) ALJ Iafe conducted the first administrative hearing on Plaintiff's application on June 11, 2020. (AR 56-104.) ALJ Iafe heard testimony from Plaintiff, who was present with his attorney, and Vocational Expert Bonnie Sinclair. (*See id.*) ALJ Iafe conducted the second hearing on Plaintiff's application on June 17, 2020. (AR 30-54.) ALJ Iafe heard further testimony from Plaintiff, who was present with his attorney, and Vocational Expert Kenneth Ferra ("VE Ferra").

On July 1, 2020, ALJ Iafe determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act and memorialized his findings in a Notice of Decision ("Decision"). (AR 7-24.) On August 3, 2020, Plaintiff requested that the Appeals Council review ALJ Iafe's Decision. (AR 228-29.) The Appeals Council denied Plaintiff's request on December 11, 2020, thereby finalizing ALJ Iafe's decision that day. (AR 1-6.)

On February 5, 2021, Plaintiff initiated this civil action, requesting this Court's reversal of ALJ Iafe's Decision and a resulting remand for further administrative proceedings. (Doc. No. 1). Two months later, on April 8, 2021, Plaintiff filed with the Commissioner another application for supplemental security income benefits under Title XVI and disability insurance benefits under Title II and Part A of Title XVIII of the Act. (AR 1276-93.) On November 21, 2021, the Commissioner found Plaintiff disabled as of July 2, 2020, which was one day after ALJ Iafe determined that Plaintiff was not disabled. (Doc. No. 13, Exhibit ["Exh."] 1; AR 7-24.)

### III. FACTUAL BACKGROUND

#### a. Plaintiff's Medical History

Plaintiff is a 55-year-old male who alleges that he is unable to work because of his disability and entitled to disability insurance benefits under Title II and Part A of Title XVIII of the Social Security Act on account of his disability. (AR 230.) Plaintiff claims that, since March 24, 2018, he has been unable to work because he suffers from physical and mental impairments. (AR 263.) In March 2018, Plaintiff underwent a quintuple bypass where doctors removed a vein from his leg to replace one in his heart. (AR 269.) Plaintiff attributes his physical impairments to fatigue, hypertension, diabetes, and high cholesterol. (AR 263.) Further, Plaintiff attributes his mental impairments to short term memory loss. (*Id.*) Plaintiff reports taking Amlodipine and Losartan for hypertension, Aspirin and Carvedilol for his heart conditions, Humulin insulin and Metformin for his diabetes, Atorvastatin for his elevated cholesterol, and ferrous sulfate for his iron deficiency. (AR 325.) Between March 2018 and October 2019, Plaintiff treated with various physicians for his physical and mental impairments. Specifically, Plaintiff treated with Drs. William D. Keen, Victor Wong, and Rami Hachwi for his physical impairments and Dr. Jessica Durr

for his mental impairments[1]. (*See generally* AR 13-18.) Prior to Plaintiff's alleged onset of disability, he worked 40 hours per week for over six years as a general technician. (AR 265.)

### b. Plaintiff, VE Sinclair, and VE Ferra's Testimony at Hearing

#### i. June 11, 2020, Hearing

On June 11, 2020, ALJ Iafe held a telephonic hearing on Plaintiff's period of disability and disability insurance benefits application. (AR 56.) Plaintiff was present and represented by his attorney, John Molitoris. (*Id.*) Bonnie Sinclair, a vocational expert, ("VE Sinclair") was also present. (*Id.*)

Plaintiff testified about his job duties and job history. (AR 69-71.) Plaintiff worked as a generator technician for 15 to 20 years, where he maintained and serviced backup generators for multi-story buildings, including hospitals, hotels, and court offices. (*Id.*) Plaintiff's position required a lot of heavy lifting, long hours, and out-of-town travel. (AR 69.) When ALJ Iafe asked Plaintiff to describe why he is unable to presently work, Plaintiff identified various physical and mental impairments. (AR 76.) Plaintiff complained of a lack of physical strength, fatigue, left foot numbness, and a strange "cotton ball" sensation on the bottom of his left foot. (AR 76-78.) Additionally, Plaintiff testified that he has used a cane since his quintuple bypass surgery. (AR 76, 269.) Due to fatigue, Plaintiff asserted that he could only lift 15 pounds for approximately five minutes before having to sit down for 30 minutes to recover. (AR 83-84.) Further, Plaintiff stated he experiences fatigue after walking half of a city block and has not been able to comfortably walk more than half of a city block in over a year. (AR 84-85.) Regarding his foot issues, Plaintiff also testified he experiences back pain because he adjusted the way he walks to mitigate the numbness and cotton ball sensation. (AR 78, 88.) Finally, Plaintiff explained that sitting down alleviates

---

[1] For purposes of this Order, the physicians' treatment and assessment of Plaintiff are not implicated in the Court's analysis. Accordingly, the Court omits discussion of Plaintiff's treating history with the named physicians.

the cotton ball sensation, but that his foot starts tingling after an hour. (AR 88.) Plaintiff added that, when he gets back on his feet, the tingling temporarily subsides, but the uncomfortable cotton ball sensation persists. (*Id.*)

Next, ALJ Iafe asked VE Sinclair whether jobs existed in the national economy for a hypothetical individual with Plaintiff's age, education, work experience, and residual functional capacity ("RFC"). (AR 97.) ALJ Iafe defined the hypothetical individual as a person who works at a light level of exertion, lifts up to 20 pounds occasionally and 10 pounds frequently, stands and walks for six out of eight hours, and sits for six out of eight hours with normal breaks. (*Id.*) VE Sinclair testified that Plaintiff's past work as a maintenance mechanic would not be available with light levels of exertion. (*Id.*) Within the range of light exertion, VE Sinclair identified three jobs that a hypothetical individual with Plaintiff's age, education, work experience, and RFC could perform, namely counter clerk, information clerk, and cashier. (AR 97-98.) VE Sinclair estimated that approximately 445,500 counter clerk positions, 1.04 million information clerk positions, and 1.7 million cashier positions existed in the national economy at the time of the hearing. (*Id.*) The telephonic hearing was interrupted by persistent technical difficulties, and ALJ Iafe thereby postponed the hearing to June 17, 2020. (AR 93-103.)

### ii.  June 17, 2020 Hearing

On June 17, 2020, ALJ Iafe held a supplemental telephonic hearing. (AR 30.) This hearing was scheduled as a continuation of the initial hearing on June 11, 2020, which ALJ Iafe postponed due to technical difficulties. (AR 93-103.) Plaintiff was present and represented by his attorney, John Molitoris. (AR 30.) VE Ferra replaced VE Sinclair for this hearing. (*Id.*)

Plaintiff continued to respond to questions from ALJ Iafe to develop the extent of his physical and mental impairments. (AR 34-43.) Discussing his physical impairments, Plaintiff stated that he used to be able to walk two to three times around Chollas Lake, which is a 0.8-mile loop. (AR 35.) Plaintiff explained that he would routinely take four to five breaks, each ranging from 10 to 15 minutes, when walking around the lake. (AR 37.)

Additionally, Plaintiff testified that he used his cane when walking around the lake. (*Id*.) However, Plaintiff reported that his fatigue had not improved since his quintuple bypass, and he had not walked around Chollas Lake for over a year. (AR 38-39.) Citing short-term memory issues, Plaintiff stated that he places sticky notes throughout his home as reminders. (AR 39.) Plaintiff asserted that his short-term memory problems developed after his bypass surgery. (AR 40.) Plaintiff noted that he could not remember content from his phone conversations while he would participate in such conversations. (*Id*.) Additionally, Plaintiff testified he does not remember his left foot orthotic prescription and or that Dr. Hachwi recommended hiking and swimming exercises for his left foot. (AR 42-43.)

VE Ferra first identified Plaintiff's past relevant work as electrical technician, with a specific vocational preparation ("SVP") of seven. (AR 44.) Next, ALJ Iafe asked VE Ferra whether jobs existed in the national economy for a hypothetical individual with Plaintiff's age, education, work experience, and RFC, who could stand and walk for six out of eight hours and lift no more than 20 pounds occasionally and 10 pounds frequently, where Plaintiff's past work was not available. (AR 45-46.) VE Ferra indicated the following positions would be compatible with the hypothetical profile: cashier II, cleaner, and fast-food worker. (AR 46.) ALJ Iafe then added the following criteria to the hypothetical profile: understanding, remembering, carrying out simple instructions for unskilled work tasks; simple, work-related decision-making; and making a few workplace changes. (AR 46.) VE Ferra concluded that past work would not be available, but cashier II, cleaner, and fast-food worker would be available. (*Id*.)

ALJ Iafe then posed a hypothetical individual who could lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six out of eight hours; stand and walk for four out of eight hours; and have the option to sit or stand at will. (AR 47.) ALJ Iafe added that the hypothetical individual could never climb ramps, ladders, ropes, and scaffolding; had an occasional basis for crouching and climbing ramps; and must avoid concentrated exposure to extreme cold, extreme heat, solvents, and cleaners and avoid even moderate exposure to cigarette smoke. (*Id*.) Finally, ALJ Iafe noted the hypothetical individual would

be absent from work one day per month "as a consequence of the symptoms of the impairments or treatment." (*Id.*)

With ALJ Iafe's parameters set, VE Ferra opined that the hypothetical individual's significant level of absenteeism precluded the individual from engaging in his past work as well as any unskilled entry-level work. (*Id.*) In eliminating the absenteeism factor, VE Ferra determined that two positions would be available at the light, unskilled, SVP level of two: cashier II and mail clerk. (AR 48.) VE Ferra asserted that the available cashier II and mail clerk jobs in the national economy would need to be reduced by 70 percent to accommodate the sit/ stand option. (*Id.*) Accordingly, VE Ferra opined that approximately 132,000 cashier II jobs and 14,400 mail clerk jobs would be available in the national economy. (*Id.*)

At the sedentary level of exertion, the order clerk position would be available. (AR 48-49.) To accommodate the sit/ stand option, VE Ferra again reduced the number of jobs available in the national economy by 70 percent, leaving 1,600 available order clerk positions. (AR 49.) When asked to add the use of a single-point cane for extended ambulation to the hypothetical individual's RFC, VE Ferra contended he did not think "any of those positions would be affected by the use of the cane simply for ambulation." (AR 49.) However, if the individual needed the cane for balance, VE Ferra explained no jobs would be available. (AR 50.) If the hypothetical individual needed a 15-minute break per hour, VE Ferra added that no jobs would be available in such context. (*Id.*) VE Ferra noted that issues regarding ambulation, use of a cane, absenteeism, and off-task were not issues addressed by the Department of Labor. (*Id.*) When asked to address the discrepancy between VE Sinclair's estimate and his own estimate of the cashier II jobs available in the national economy, VE Ferra explained that he adopts the Office of Employment Security ("OES") codes, breaks them down into individual Dictionary of Title ("DOT") codes, and uses his "best judgment based upon [his] education, training, experience to assign what [he] believe[s] is going to be the best estimate of the jobs available in the national economy." (*Id.*)

### c. ALJ Iafe's July 1, 2020, Decision

On July 1, 2020, ALJ Iafe issued a Notice of Decision ("Decision"), finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act from March 24, 2018, through the date of the Decision. 20 CFR § 404.1520(g). (AR 20.) ALJ Iafe's Decision proceeded through the five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR § 404.1520(a). (AR 11.) Upon consideration of the entire record, ALJ Iafe based his Decision on 11 findings of fact:

(1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022 (AR 12.);

(2) Plaintiff had not engaged in substantial gainful activity since March 14, 2018, the alleged onset date (citing 20 CFR §§ 404.1571 *et seq*.) (AR 12.);

(3) Plaintiff had the following severe impairments: ischemic cardiac disease (status post coronary artery bypass grafting); saphenous neuropathy of the left lower extremity; left foot drop; and lumbar spondylosis (citing 20 CFR § 404.1520(c)) (AR 12.);

(4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR §§ 404.1520(d), 404.1525, and 404.1526) (AR 14.);

(5) Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR §404.1567(b) but could only stand or walk for a total of four hours in an eight-hour workday. Plaintiff required the option to sit or stand at will. Plaintiff could never climb ladders, ropes or scaffolds, and he could occasionally crouch and climb ramps and stairs. Plaintiff could frequently stoop. Plaintiff must avoid concentrated exposure to extreme cold, extreme heat, solvents, and cleaners. Plaintiff must avoid moderate exposure to soldering fluxes and cigarette smoke. Plaintiff required the use of a single-point cane for extended ambulation (AR 15.);

(6) Plaintiff was unable to perform any past relevant work (citing 20 CFR § 404.1565) (AR 18.);

(7) Plaintiff was fifty years old at the time of the Decision's issuance, which is defined as an individual closely approaching advanced age on the alleged disability onset date (citing 20 CFR § 404.1563) (AR 19.);

(8) Plaintiff had at least a high school education and was able to communicate in English (citing 20 CFR § 404.1564) (AR 19.);

(9) Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not Plaintiff had transferrable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2) (AR 19.);

(10) Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (citing 20 CFR §§ 404.1569 and 404.1569(a)) (AR 19.);

(11) Plaintiff had not been under a disability, as defined in the Social Security Act, from March 24, 2018, through the date of the Decision (citing 20 CFR §404.1520(g)) (AR 20.)

### d. Subsequent Grant of Disability Insurance Benefits

Plaintiff submitted subsequent applications for supplemental security income benefits and disability insurance benefits on April 8, 2021, alleging disability onset as of July 2, 2020. (AR 1276-93). On November 21, 2021, the Commissioner issued a Notice of Award on Plaintiff's subsequent applications, finding Plaintiff disabled as of July 2, 2020. (Doc. No. 13, Exh. 1.)

///
///
///

## IV. LEGAL STANDARD

Under Title II of the Social Security Act, a claimant may seek judicial review of the Commissioner's decision on their disability benefits application under Section 405(g) of the Act ("Section 405(g)"). 42 U.S.C § 405(g). The scope of judicial review is limited, and the denial of benefits will not be disturbed unless the decision is based on legal error or not supported by substantial evidence. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1009 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). To determine whether the ALJ's decision is supported by substantial evidence, courts must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). If the evidence is subject to more than one rational interpretation, the ALJ's decision must be upheld. *Id*. However, courts cannot affirm the decision "simply by isolating a specific quantum of supporting evidence." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

## V. DISCUSSION

### a. Whether a Subsequent Grant of Benefits Necessitates Remand

Plaintiff argues that the Commissioner's subsequent grant of disability insurance benefits, which was awarded one day after ALJ Iafe deemed Plaintiff not disabled, constitutes good cause for remand under sentence six of Section 405(g) because the Commissioner's initial denial and subsequent reward are not easily reconcilable. *See Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). Specifically, Plaintiff argues the subsequent grant of benefits and the records considered therein constitute new and material evidence. For the Court to order a remand, Plaintiff bears the burden of showing "that there is new evidence is *material* and that there is *good cause* for failing to incorporate such evidence into the record in a prior proceeding…." *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d

1378, 1380 (9th Cir. 1984) (quoting 42 U.S.C. § 405(g)). To support a finding of materiality, new evidence must "bear [] directly and substantially on the matter in dispute" and there must be a "reasonable possibility that the new evidence would have changed the outcome of the … determination." *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (quoting *Booz*, 734 F.2d at 1380).

      Plaintiff relies heavily on the *Luna* decision to anchor his argument in support of a remand. In *Luna*, Carmen C. Luna ("Luna") applied for disability insurance benefits and supplemental security income, claiming a disability onset date of November 30, 2002. 623 F.3d at 1033. The Commissioner initially denied Luna's application. *Id*. On appeal to the ALJ, Luna amended her alleged disability onset date to March 26, 2003. *Id*. On January 27, 2006, the ALJ denied Luna's claims, concluding that Luna was not disabled. *Id*. Luna subsequently filed a complaint in district court challenging the ALJ's decision. *Id*. At 1034. While her first application was under consideration by the district court, Luna submitted a second application for disability insurance benefits and supplemental security income. *Id*. In response to Luna's second application, the Commissioner issued a Notice of Award after finding Luna disabled as of January 28, 2006, which was one day after the ALJ found her not disabled based on her initial application. *Id*. While both parties agreed that the case should be remanded, they did not agree on the remand terms. *Id.* Luna contended that the proper remedy was a remand ordering payment of benefits for the earlier timeframe based on her first application, because her subsequent finding of disability, she argued, "clearly indicated" she was disabled for that earlier period. *Id*. Instead, the district court granted the Commissioner's motion to remand for further factual proceedings to consider whether Luna was actually disabled during that initial timeframe. *Id*. Luna's appeal followed. *Id*.

      In *Luna*, the district court explicitly adopted the proposition that "in certain circumstances, an award based on an onset date coming in immediate proximity to an earlier denial of benefits is worthy of further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome of the claim." 623 F.3d at 1034 (citation omitted). The court highlighted that Luna's second, successful application

11

21-CV-225-SBC

claimed a disability onset date that was one day after the ALJ found her not disabled based on her first application. *Id*. The Ninth Circuit agreed with the district court's assessment and found a remand for further consideration was appropriate. *Id*. In so deciding, the Ninth Circuit reasoned there was a "'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application," which "indicate[d] that further consideration of the factual issues [wa]s appropriate to determine whether the outcome of the first application should be different. *Id*. (citing *Booz v. Sec'y of Health and Human Services*, 734 F.2d 1378, 1380-81 (9th Cir. 1984).).

In reaching its decision, the Ninth Circuit relied upon *Bruton* to draw upon factual disparities supporting a remand in *Luna*. *Id*. at 1035 (citing *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001), which upheld denial of remand where the initial denial and subsequent award were "easily reconcilable") (distinguishing *Bruton* from *Luna* by noting "Bruton's second application involved different medical evidence, a difference time period, and a different age classification," which was "not true here" in *Luna*). The Ninth Circuit clarified that the mere fact that the Commissioner's initial denial and subsequent grant of benefits occurred in close temporal proximity did not in itself compel a remand for further proceedings on the initial application. In *Bruton*, the plaintiff's second application for disability insurance benefits was based on different medical evidence, a different time period, and a different age classification than his first application. *Id*. Conversely, the Ninth Circuit noted, Luna did not present any further evidence regarding her subsequent grant of benefits, and the record thus precluded the court from determining whether the two decisions were reconcilable. *Luna*, 623 F.3d at 1034-35. Based on these considerations, the Ninth Circuit concluded that there was a "reasonable possibility" that Luna's successful application was based on new evidence that was not before the ALJ in her initial application. *Id*. at 1035. Therefore, the Ninth Circuit found a remand for further factual proceedings was the appropriate remedy to determine whether Luna's first application was improperly decided. *Id*.

Here, the Court is presented with a set of facts nearly identical to those in *Luna*. *See* 623 F.3d 1032. The Commissioner found Plaintiff disabled based on Plaintiff's subsequent application for disability insurance benefits just one day after ALJ Iafe found Plaintiff not disabled based on his first application. (AR 20; Doc. No. 13, Exh. 1.) Moreover, Plaintiff, like Luna, did not provide any additional information on his second, successful application. *See Luna*, 623 F.3d at 1034. (Doc. No. 13, Exh. 1.) Plaintiff attested in his Motion for Summary Judgment that his subsequent application was based on the "same type and quality of evidence" that supported his initial application. (Doc. No. 13, 7:20-21.) Further, Plaintiff argued that ambiguities in VE Ferra and ALJ Iafe's testimony permitted the Commissioner to make a finding of disability without disturbing Plaintiff's existing medical-vocational profile. (*Id*. 6:24-7:1.) However, Plaintiff has not presented this Court with any additional evidence to refute or substantiate Plaintiff's claim. For this reason, the Court cannot conclude whether Plaintiff's second application was in fact based on the same type and quality of evidence. In turn, the Court finds the Commissioner's initial and subsequent Decisions are at odds and thus not easily reconcilable based on the record before the Court. *See Luna*, 623 F.3d at 1035 (concluding "Given this uncertainty, remand for further factual proceedings was an appropriate remedy") (quoting *Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1195 n. 3 (9th Cir. 2008) ("The proper remedy for an inadequate record ... is to remand to the agency for further factfinding.").

Separately, under *Booz*, the Court finds there is a "reasonable possibility" that Plaintiff's successful application was either based on new or different evidence that ALJ Iafe had not considered when reviewing Plaintiff's initial application. *See Booz*, 734 F.2d at 1380; *see also Luna*, 623 F.3d at 1035 (citing same and concluding "the 'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application indicates that further consideration of the factual issues is appropriate to determine whether the outcome of the first application should be different."). As noted, the Court observes that the Commissioner's subsequent disability finding was in close proximity to its initial denial of Plaintiff's benefits application, and

there is no existing evidence to rectify the discrepancy between the two results. *See Luna*, 623 F.3d at 1034 ("[I]n certain circumstances, an award based on an onset date coming in immediate proximity to an earlier denial of benefits is worthy of further administrative scrutiny."). Therefore, the Court additionally finds that Plaintiff's successful application constitutes new and material evidence because there is a reasonable possibility that his successful application could change the outcome of the Commissioner's initial denial of benefits. *See id*. at 1035. Consistent with the Ninth Circuit's holding in *Luna*, the Court opines that a remand for further factual proceedings is the appropriate remedy to resolve an inconsistency in the record and determine whether Plaintiff's favorable determination should alter the Commissioner's initial denial of his disability benefits application. *See id.*

### b. Whether ALJ Iafe Improperly Relied on VE Ferra's Testimony

Plaintiff separately argues ALJ Iafe improperly relied on VE Ferra's testimony when assessing Plaintiff's RFC. Once a claimant makes a *prima facie* showing of disability, the Commissioner has the burden of establishing that the claimant can perform work that exists in significant numbers in the national economy. *Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner can meet this burden using vocational expert testimony, so long as the ALJ poses the vocational expert hypothetical questions that are grounded in the claimant's impairments. *See Lockwood*, 616 F.3d at 1071; *Garrison v. Colvin*, 759 F.3d at 1011. Further, the ALJ's portrayal of the claimant's RFC must be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d at 1101. Finally, conflicts exist between the vocational expert's testimony and the Dictionary of Titles ("DOT" or "Dictionary") when they are obvious or apparent; "[t]his means that the testimony must be at odds with the Dictionary's listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016).

/ / /

/ / /

In *Gutierrez*, claimant Maria Gutierrez was denied disability insurance benefits after the ALJ determined that she could perform the position of cashier. 844 F.3d at 807. Although Gutierrez could not lift more than five pounds with her right arm or lift that arm above her shoulder, the ALJ evaluated the vocational expert's testimony and concluded that she could work as a cashier, despite the DOT's definition of cashier, which requires "frequent reaching." *Id*.; (DOT No. 211.462-010); *see* SSR 85-15 (reaching includes extending the hands and arms in any direction). Gutierrez argued that the ALJ erred at step five in the sequential evaluation process by not asking the vocational expert more specific questions regarding her inability to reach overhead with her right arm. 844 F.3d. at 807. The Ninth Circuit explained the ALJ only needed to probe the vocational expert on conflicts between the vocational expert's testimony and DOT statements that were obvious or apparent. *Id*. at 808. Notwithstanding the DOT's "frequent reaching" requirement of cashiers and stock clerks, the court highlighted that "anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to." *Id*. Moreover, the vocational expert eliminated all jobs that required weight bearing and overhead reaching when responding to the ALJ's hypothetical question. *Id*. at 809. The court ultimately held that the ALJ did not err because there was no obvious or apparent conflict between the vocational expert's testimony and the DOT. *Id.* at 808 (an ALJ's duty to further develop the record by asking additional clarifying questions of the vocational expert does not extend to unlikely situations or circumstances).

Here, Plaintiff highlights a purported ambiguity in his RFC, as determined by ALJ Iafe. (*See generally* Doc. No. 13.) First, Plaintiff highlights a discrepancy between ALJ Iafe's finding that Plaintiff could engage in light work and thus stand and walk for up to four out of eight hours, while the Social Security Regulations define light work as requiring standing and walking for approximately six out of eight hours. (*See* Doc. No. 13. 5:23-25.); SSR 83-10. The Court is not persuaded that this was an apparent or obvious conflict that required ALJ Iafe to probe VE Ferra further. As noted, the Ninth Circuit made clear in

*Gutierrez* that an "obvious or apparent" conflict between an expert's testimony and the *Dictionary*'s listings exists when the testimony is "at odds with the *Dictionary*'s listing of job requirements that are essential, integral, or expected." *Id*. The Ninth Circuit elaborated that "tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one – like cashiering – less scrutiny by the ALJ is required." *Id*. Here, the cashier II and mail clerk positions required the execution of a number of mundane tasks, most of which can be accomplished while standing or sitting. A common sense understanding of the job requirements for either position would support the proposition that frequent walking (up to six hours in an eight-hour workday), is not an essential, integral, or expected duty. *See Gutierrez*, 844 F.3d at 808 (stating "the examples given by the Dictionary – 'Cafeteria Cashier,' 'Store Cashier,' 'Change-Booth Cashier' – contemplate such mundane functions as making change, operating a cash register, selling tickets, and scanning Universal Product Codes…"). Thus, the Court opines there was no apparent or obvious conflict that called upon ALJ Iafe's further inquiry.

Separately, the Court finds that, even if there was an apparent or obvious conflict, ALJ Iafe properly questioned VE Ferra regarding a hypothetical individual who has an option to sit or stand at will and could only stand and walk for up to four out of eight hours. (AR 47-48.) VE Ferra responded to ALJ Iafe by reducing the number of available positions by 70 percent to accommodate a sit/ stand option and then testified these positions would still be available for a hypothetical individual who could only stand and walk for four hours. (*Id*.) Accordingly, the Court finds ALJ Iafe was not remiss in seeking further information to explain any conflict between the VE Ferra's prior testimony and the *Dictionary of Occupational Titles*.

Next, Plaintiff disputes VE Ferra's methodology for estimating the number of available jobs in the national economy. (*Id.* at 5:25-6:10.) VE Ferra testified that he used the OES codes and broke them down to individual DOT codes along with his "best judgment based upon [his] education, training, and experience" to give a best estimate of

available jobs in the national economy. (AR 51.) Plaintiff notes that VE Ferra did not state how he mechanically derived his numbers despite the opportunity to do so, but ALJ Iafe did not dispute VE Ferra's testimony. (*Id*.) On this point, the Court finds that ALJ Iafe was not required to develop additional foundation with VE Ferra because it is settled law that a vocational expert's "recognized expertise provides the necessary foundation for his or her testimony." *Bayliss v. Barnhart*, 427 F.3d at 1218.

Finally, Plaintiff alleges that ALJ Iafe improperly failed to define "extended" when asking VE Ferra whether the use of a single-point cane would affect Plaintiff's ability to walk within his total walking capacity of four hours per day. (*See* Doc. No. 13. at 6:11-23; AR 49.) Plaintiff correctly points out that "extended" was not defined in VE Ferra's testimony; concurrently, however, Plaintiff fails to support his proposition that non-vocational terms *must* be defined. (*See id*. at 6:18-23.) The Court is not persuaded that ALJ Iafe's failure to define the term "extended" had any material impact or effect on Plaintiff's RFC. Plaintiff's argument additionally lacks merit because VE Ferra asserted that the use of a single-point cane for ambulation "would not affect" the availability of cashier II, mail clerk, or order clerk. (AR 49.) In light of the circumstances, the Court finds that ALJ Iafe did not err when relying on VE Ferra's testimony for his step-five finding.

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Cross-Motion for Summary Judgment. This case is REMANDED for further administrative proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: December 8, 2023

Hon. Steve B. Chu
United States Magistrate Judge